AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

**JAN 2 6 2018**

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH TAY2GIRLS THAT
IS STORED AT PREMISES CONTROLLED BY
INSTAGRAM

)
)
)
)
)

Case No.  1:18sw55

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ **Northern** _____ District of _____ **California** _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute controlled substances |
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan F. Earle, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 01/26/2018 _____

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
_____
*Judge's signature*

City and state: Alexandria, Virginia

Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with usernames: TAY2GIRLS, which are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a.    All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.    All past and current usernames associated with the account;

c.    The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.    All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e.    All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.    All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.    All communications or other messages sent or received by the account;

h.    All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

i.    All photographs and images in the user gallery for the account;

j.    All location data associated with the account, including geotags;

k.    All data and information that has been deleted by the user;

l.     A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.,* the user's "following" list and "followers" list), as well as any friends of the user;

m.     A list of all users that the account has "unfollowed" or blocked;

n.     All privacy and account settings;

o.     All records of Instagram searches performed by the account, including all past searches saved by the account;

p.     All information about connections between the account and third-party websites and applications; and,

q.     All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g)1 (felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances), involving TAYVON BAILEY, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) The possession and/or sale of controlled substances;

(b) The possession of firearms and ammunition;

(c) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(d) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

3

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MAN 2 6 2018

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TAY2GIRLS THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM | Case No. 1:18sw55 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan F. Earle, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I make this affidavit in support of an application for a search warrant for

information associated with TAY2GIRLS ("SUBJECT ACCOUNT") that is stored at premises

owned, maintained, controlled, or operated by Instagram, LLC, ("Instagram") a social-

networking company owned by Facebook, Inc. and headquartered in San Francisco, California.

The information to be searched is described in the following paragraphs and in Attachment A.

This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§

2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and

other information in its possession, including the contents of communications, pertaining to the

subscriber or customer associated with the SUBJECT ACCOUNT.

2.      I have been a Special Agent with ATF since 2009.  I have experience

investigating narcotics and firearms trafficking offenses.

3.      As an ATF Special Agent, I have investigated and assisted in the investigation of
narcotics and firearms traffickers.  I have previously participated in a variety of investigations,
which resulted in the arrest and conviction of narcotics and firearms traffickers.  I have also
become familiar with the methods and techniques associated with the distribution of narcotics
and how drug trafficking organizations work.  During these investigations, I have analyzed
phone and internet records and participated in the search and seizure of social media accounts.

4.      The facts in this affidavit come from my personal observations, my training and
experience, and information obtained from other agents and witnesses.  This affidavit is intended
to show merely that there is sufficient probable cause for the requested warrants and does not set
forth all of my knowledge about this matter.

5.      Based on my training and experience I know individuals use Instagram and other
social media platforms to possess, distribute or purchase firearms and or controlled substances.
Individuals use direct or private messages on Instagram to conceal from law enforcement photos,
conversations or videos of them possessing or purchasing firearms or distributing controlled
substances.

6.      Based on my training and experience and the facts as set forth in this affidavit,
there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)1
(felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846
(conspiracy to distribute and possess with the intent to distribute cocaine and other controlled
substances), as described in Attachment B have been committed by TAVON BAILEY.  There is
also probable cause to search the SUBJECT ACCOUNT for information described in
Attachment A for evidence of these crimes and items to be seized listed in Attachment B.

2

## Probable Cause

A. Background of Investigation

7.        In February 2017, a cooperating source ("CS-1") reported to the Prince William County Police Department that Tarvell Vandiver was a narcotics distributor. CS-1 is a member of the Imperial Gangsta Blood ("IGB") gang. CS-1 will be referred to in the masculine gender, regardless of CS-1's true gender. CS-1 has been convicted of two felonies, including robbery and a probation violation. He was arrested in December 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances. CS-1 originally cooperated because he hoped to receive a lesser sentence. Based on CS-1's cooperation, Prince George's County dismissed his charges. CS-1 continues to cooperate because he is being compensated. CS-1 also hopes to be relocated.

8.        In March 2017, ATF and the Federal Bureau of Investigation ("FBI") began jointly investigating Blood gang members to include Vandiver and his associates involved in criminal activity in Northern Virginia.

9.        On January 9, 2017, a federal Grand Jury returned an Indictment against Tarvell Vandiver for Conspiracy to Distribute 280 Grams or More of Cocaine Base, Conspiracy to Distribute Five Kilograms or More of Cocaine, Conspiracy to Distribute 100 Grams or More of Heroin, Distribution of 28 Grams or More of Cocaine Base, Distribution of 280 Grams or More of Cocaine Base, Distribution of 40 Grams or More of Fentanyl and Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime.

B. BAILEY's Involvement in Drug Trafficking

10.        On July 18, 2017, CS-1, at the direction of law enforcement, socialized with BAILEY at an address located in Washington, DC. While at the address, BAILEY asked CS-1

for $100 in order to purchase a quantity of cocaine from Vandiver. CS-1 provided BAILEY $100 in United States currency.

11.     On July 22, 2017, CS-1, at the direction of law enforcement, socialized with BAILEY in the area Washington, DC. While socializing with BAILEY, BAILEY told CS-1 that he had used the $100 provided by CS-1 to purchase $100 worth of cocaine from Vandiver. BAILEY further informed CS-1 that he made $900 profit from the cocaine and that he wanted to increase his cocaine distribution due to the high profit margin.

12.     On July 25, 2017, CS-1, at the direction of law enforcement, was present with BAILEY and Vandiver at the residence of a co-conspirator, located in Woodbridge, Virginia. While at this residence, CS-1 and BAILEY were present while Vandiver cooked cocaine into cocaine base, a Schedule II controlled substance. Once Vandiver was finished cooking cocaine base, CS-1 traveled with Vandiver and BAILEY to a gas station in Woodbridge, where Vandiver distributed an amount of cocaine base to Brandon Edler. Edler is currently charged via criminal complaint in the Eastern District of Virginia with conspiring to distribute cocaine base.

13.     On August 8, 2017, CS-1, at law enforcement direction, was present with BAILEY and Vandiver in the area of Woodbridge. Vandiver drove CS-1 and BAILEY to an address in Woodbridge, where Nasiru Carew provided Vandiver with a light blue plastic bag. Carew is currently charged via criminal complaint in the Eastern District of Virginia with conspiracy to distribute marijuana. CS-1 stated that he believed that this bag contained an amount of marijuana. Vandiver then drove CS-1 and BAILEY to another address in Woodbridge, where Vandiver exited the vehicle and met with Michael Lederer. Lederer is currently charged in the Eastern District of Virginia with being a prohibited person in possession of firearms. After meeting with Lederer, CS-1 observed Vandiver walk back to Vandiver's

4

vehicle while counting money. CS-1 further stated that Vandiver was no longer in possession of the light blue plastic bag. Vandiver, CS-1, and BAILEY then returned to the address associated with Carew in Woodbridge. While at the address, CS-1 stated that Vandiver exchanged approximately one pound of marijuana for another, better quality pound of marijuana with Nathaniel Bruce-Cobbold. Cobbold is currently charged via criminal complaint in the Eastern District of Virginia with conspiracy to distribute marijuana. CS-1 stated that Vandiver then transported BAILEY to his vehicle.

C.  Surveillance of BAILEY and Vandiver

14.  On December 4, 2017, Vandiver contacted CS-1 and informed him of a mandatory IGB leadership meeting that was scheduled to be held on December 5, 2017, in Richmond, Virginia. CS-1 was further instructed to drive Vandiver and BAILEY to the meeting. CS-1 was told to be at Vandiver's residence in the morning hours of December 5, 2017.

15.  On December 5, 2017, law enforcement met with CS-1 and placed an audio recording/transmitting device on his person. CS-1 was followed to the area of Vandiver's residence on Bayside Avenue, Woodbridge, Virginia, where CS-1 picked up Vandiver and BAILEY. Vandiver and BAILEY exited Vandiver's apartment and met CS-1 in the parking lot. Both BAILEY and Vandiver entered CS-1's vehicle and they departed with law enforcement following the vehicle. Law enforcement followed CS-1's vehicle on Bayside Avenue and observed the vehicle turn around and return to the parking lot of Vandiver's residence.

16.  A 2009 Dodge Challenger, bearing Virginia registration XXX-7UL was parked near the front of the entrance to Vandiver's building. In the past, law enforcement have observed Vandiver operating this vehicle despite the fact that it is registered to a female. Law enforcement observed CS-1 park outside of Vandiver's residence in the area of Vandiver's

5

Dodge Challenger, remain for a few minutes, then drive away from the area in his vehicle, with BAILEY and Vandiver as passengers.

17.    Law enforcement listened in real-time (and later reviewed to corroborate) the conversation that took place within CS-1's vehicle.  CS-1 was also relaying intelligence about the conversation to law enforcement.  For instance, CS-1 informed law enforcement that BAILEY had placed a firearm in the glovebox of Vandiver's Dodge Challenger.

18.    When the group departed the apartment in CS-1's vehicle, Vandiver asked BAILEY if he brought his "joint" (based on my training and experience, I know "joint" is a common slang term for a firearm).  BAILEY responded, "Yea."  Vandiver asked BAILEY, "You wanna bring that shit bro, if you don't want to, you don't got to, for real."  BAILEY responded, "That's good, I'll put it back."  Vandiver told BAILEY, "That nigga BILLZ bringing a joint, I don't think you really need it."  BILLZ is a known IGB gang member as well.  Vandiver told BAILEY, "Throw it in my car real quick."

19.    CS-1 later informed law enforcement that he turned the vehicle around after initially departing Vandiver's residence and returned to the parking lot.  According to CS-1, when BAILEY and Vandiver entered his vehicle, BAILEY had a black pistol in his waistband. CS-1 stated BAILEY and Vandiver had a conversation about the firearm and Vandiver instructed BAILEY to place the firearm in his (Vandiver's) vehicle.  CS-1 stated BAILEY exited his vehicle and went to the driver's side of Vandiver's Dodge Challenger.  CS-1 stated Vandiver provided BAILEY with the key to place the firearm in the glove box.  CS-1 stated BAILEY placed the firearm in the glove box and then exited Vandiver's vehicle.  When BAILEY returned to CS-1's vehicle, he realized he still had a magazine on him, so he returned to Vandiver's vehicle to place the magazine in the glovebox as well.

6

### D.  Search Warrant on Vandiver's Dodge Challenger

20.      On December 4, 2017, the Honorable Theresa Carroll Buchanan, United States

Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for Vandiver's

2009 Dodge Challenger bearing Virginia registration XXX-7UL.

21.      After learning BAILEY had placed his firearm in the glovebox of Vandiver's

vehicle, law enforcement located the vehicle, which remained parked outside of Vandiver's

residence on Bayside Avenue.  On December 5, 2017, at approximately 1:42 p.m., law

enforcement executed the search warrant and had the vehicle towed to a secured parking lot

maintained by the Prince William County Police Department.  Law enforcement commenced

searching the vehicle at approximately 2:38 p.m.  Inside the vehicle, law enforcement located

and seized suspected cocaine under the floor mat of the driver's seat.  Inside the glovebox of the

vehicle, law enforcement located and seized a Sig Sauer SP2340 .40 caliber pistol.  Based upon

my training and experience, I know this pistol to be a firearm as that term is defined in Title 18,

United States Code, Section 921(a)(3).  I also know that the Sig Sauer SP2340 .40 caliber pistol

is manufactured outside of the Commonwealth of Virginia; consequently, the firearm has

traveled in interstate commerce.

### E.  BAILEY's Criminal History

22.      Law enforcement has reviewed BAILEY's criminal history.  BAILEY has been

convicted in the Commonwealth of Virginia of ten felony offenses, with each punishable by

imprisonment for a term exceeding one year.  On October 3, 2013, BAILEY was convicted of

Possession of a Firearm by a Felon in Alexandria, Virginia.  BAILEY is currently on probation

out of Alexandria, Virginia.

7

F. Probable Cause to Search the Account

23.    Law enforcement identified the SUBJECT ACCOUNT as belonging to BAILEY because of photos he posts of himself that match law enforcement booking photos of BAILEY. In addition, co-conspirators refer to BAILEY as "T2G." I have also observed the user of the SUBJECT ACCOUNT promoting his own music, under the name "Black Gawd," which I know to be one of BAILEY's aliases.

24.    A review of publicly posted information on the SUBJECT ACCOUNT also revealed a video posted on December 27, 2107 with BAILEY is possession of a green leafy substance consistent with marijuana. During the course of this investigation law enforcement has observed photos and/or videos of BAILEY in possession of a firearm on Instagram. Since BAILEY"s arrest on December 5, 2017, law enforcement have overserved that those photos and/or videos of BAILEY have been deleted from his account.

25.    Based on this information, I believe there is probable cause to support that the SUBJECT ACCOUNT has evidence of BAILEY possessing firearms after being previously convicted of a felony offense in the state of Virginia and evidence of BAILEY in possession of controlled substances.

## Background on Instagram

26.    From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

27.    Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other

8

information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

28. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

29. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

30. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

31. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram

may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

32.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

33.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

34.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

35.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

36.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

37.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example,

10

Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

38.     Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

39.     Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

40.     Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

41.     On December 6, 2017, law enforcement served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the SUBJECT ACCOUNT.

42.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs,

shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses

12

and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## Information To Be Searched And Things To Be Seized

44.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

45.    Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of Title 18, United States Code, Section 922(g)1 (felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances), and Title 26, United States Code, Section 5861(d) (receipt and possession of unregistered firearm) may be located in the SUBJECT ACCOUNT described in Attachment A.

46.    This Court has jurisdiction to issue the requested warrant to Instagram because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

47.    Based on the forgoing, I request that the Court issue the proposed search warrant.

13

48.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Jonathan F. Earle
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

SUBSCRIBED and SWORN to before me on ____1 / 24_____, 2018.

_____/s/_____
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with usernames: TAY2GIRLS, which are stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

a.    All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.    All past and current usernames associated with the account;

c.    The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.    All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

e.    All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

f.    All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.    All communications or other messages sent or received by the account;

h.    All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

i.    All photographs and images in the user gallery for the account;

j.    All location data associated with the account, including geotags;

k.    All data and information that has been deleted by the user;

l.   A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

m.   A list of all users that the account has "unfollowed" or blocked;

n.   All privacy and account settings;

o.   All records of Instagram searches performed by the account, including all past searches saved by the account;

p.   All information about connections between the account and third-party websites and applications; and,

q.   All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g)1 (felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances), involving TAYVON BAILEY, including, for the usernames identified on Attachment A, information pertaining to the following matters:

(a) The possession and/or sale of controlled substances;

(b) The possession of firearms and ammunition;

(c) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(d) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation;

3

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Instagram, LLC, and my

official title is _____. I am a custodian of records for Instagram,

LLC. I state that each of the records attached hereto is the original record or a true duplicate of

the original record in the custody of Instagram, LLC, and that I am the custodian of the attached

records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.  all records attached to this certificate were made at or near the time of the occurrence

       of the matter set forth, by, or from information transmitted by, a person with

       knowledge of those matters;

    b.  such records were kept in the ordinary course of a regularly conducted business

       activity of Instagram, LLC; and,

    c.  such records were made by Instagram, LLC as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____    _____

Date                        Signature